ANTHONY GOODEN *v.* COMMISSIONER
OF CORRECTION
(AC 31306)

Bishop, Gruendel and Robinson, Js.

Argued January 19—officially released April 5, 2011

*Charles F. Willson*, special public defender, for the appellant (petitioner).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Nicholas Bove, Sr.*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Anthony Gooden, appeals following the habeas court's denial of his petition for certification to appeal from the judgment denying his amended petition for a writ of habeas corpus. On appeal, he claims that the court abused its discretion in denying his petition for certification to appeal and that the court improperly rejected his claim that his trial counsel had provided ineffective assistance. More specifically, the petitioner claims that trial counsel failed (1) to have a third party present during an interview of a witness who allegedly stated that he would provide exculpatory testimony at the petitioner's criminal trial and (2) to lay a foundation to impeach that witness when his testimony at trial was inconsistent with the prior statement made to counsel during the interview. We dismiss the appeal.

The facts underlying the petitioner's conviction were set out at length in *State* v. *Gooden*, 89 Conn. App. 307, 309–10, 873 A.2d 243, cert. denied, 275 Conn. 918, 919, 883 A.2d 1249 (2005). "On September 15, 1999, during an undercover police operation, a confidential informant, Michael Young, arranged to meet the [petitioner] at a Bridgeport restaurant. Young was accompanied by an undercover police officer, James Lofton. Five additional officers were located inside and outside of the restaurant in order to observe the [petitioner's] interactions with Young and Lofton. The [petitioner], wearing a white Tommy Hilfiger jacket, arrived at the restaurant in a gray Ford Taurus and parked alongside Young's vehicle. Young introduced Lofton as a friend, and the [petitioner] asked Lofton how many he wanted. Lofton said that he wanted two and gave the [petitioner] two previously photocopied $20 bills. The [petitioner] gave Young two plastic bags containing cocaine, which Young passed to Lofton. The [petitioner], after exiting his vehicle to use a pay telephone, returned and drove away. A few of the officers followed the [petitioner] to 300 French Street in Bridgeport after witnessing the transaction. The officers determined that the vehicle driven by the [petitioner] was registered at that address in the name of Barbara Manning.

"Two days later, Young and Lofton again arranged to meet the [petitioner], this time in Stratford. The [petitioner] drove up in a white Pontiac Grand Am and asked Young and Lofton how many they wanted. Lofton said he wanted two and handed previously photocopied money to Young, who then handed it to the [petitioner]. The [petitioner] gave Young two plastic bags containing cocaine. Four of the officers who had witnessed the previous Bridgeport sale also witnessed the Stratford incident.

"On September 23, 1999, members of the Stratford and state police simultaneously executed two search

warrants, one at 11 Justice Street, the home of Kanzada Bishop, the [petitioner's] girlfriend at the time, and one at Manning's 300 French Street address. Upon executing the Justice Street warrant, the police forced entry into the home and found the [petitioner] in a bedroom. The [petitioner] had $614 in his pocket and the keys to the white Grand Am, which was parked in the driveway. Cocaine was found in the overhead compartment of the automobile. Upon executing the warrant at the French Street location, the officers found a suitcase and a storage bin inside of a closet. A Tommy Hilfiger jacket, which matched the description of the jacket worn by the [petitioner] during the first drug transaction, was found in the storage bin in the closet. In its pocket, the officers found a large amount of cocaine. Cocaine was also found packaged in tinfoil on the bathroom floor.

"One of the keys from the [petitioner's] key ring, which was seized at the Justice Street location, opened the suitcase from the French Street location. The police found jewelry, papers and approximately $9900 inside of the suitcase. The previously photocopied $20 bills were among the cash found in the suitcase." Id.

The record reveals the following additional undisputed facts and procedural history. In 2002, following his criminal trial, the petitioner was convicted of one count of possession of narcotics in violation of General Statutes § 21a-279 (a), one count of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and two counts of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b). Upon conviction, the trial court sentenced the petitioner to a term of imprisonment of nineteen years. Thereafter, the petitioner filed a direct appeal from the judgment of conviction, and this court reversed the judgment as to the possession charges

only. The judgment was affirmed in all other respects. *State* v. *Gooden*, supra, 89 Conn. App. 308–309.

In his amended habeas petition, filed on September 24, 2008, the petitioner alleged that he received ineffective assistance from his trial counsel, Timothy Aspinwall. On May 21, 2009, the court held a trial on the petition, at which the petitioner and Aspinwall testified. During the trial, Aspinwall testified that, prior to the petitioner's criminal trial, he had conducted an interview of Young. Aspinwall and Young were the only individuals present during the interview. According to Aspinwall, during that interview, Young stated that he would testify that the petitioner was not involved in the drug transactions for which the petitioner was charged. On the basis of Young's statement, and in view of the strength of the state's case against the petitioner, Aspinwall decided to call Young as a witness.[1] When called to the stand, however, Young testified that the petitioner *was* involved in the drug transactions. Aspinwall, apparently surprised by the testimony, did not confront Young regarding his prior statement exculpating the petitioner. Following the conclusion of the evidence, Aspinwall filed a motion for a mistrial, to withdraw as counsel and to become a witness to impeach Young's credibility. Subsequently, the trial court denied the motions primarily on the ground that Aspinwall had failed to lay a foundation in order to impeach Young's credibility.

The habeas court denied the petition for a writ of habeas corpus. The court concluded that, regardless of whether Aspinwall performed deficiently, the petitioner had failed to meet his burden of proof for a claim of ineffective assistance because the petitioner had not shown that he was prejudiced by Aspinwall's performance. Subsequently, the court denied the petition for certification to appeal. This appeal followed.

---

[1] Young did not testify in the prosecution's case-in-chief.

On appeal, the petitioner claims that Aspinwall's performance was deficient and caused him prejudice. Specifically, the petitioner claims that Aspinwall failed (1) to have a third party present during the interview of Young and (2) to lay a foundation to impeach Young when his testimony at trial was inconsistent with the prior statement made to Aspinwall during the interview. The petitioner argues that, but for these deficiencies, he would have been able to impeach Young's credibility with the prior inconsistent statement.

The standard of review and legal principles that govern the resolution of the petitioner's appeal are well settled. "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court *could* resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further. . . . The required determination may be made on the basis of the record before the habeas court and applicable legal principles. . . . If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by this court for determining the propriety of the habeas court's denial

of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed." (Emphasis in original; internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, 125 Conn. App. 641, 646–47, 9 A.3d 402 (2010).

"A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . Put another way, the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . With respect to the prejudice component, [i]t is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. . . . A court need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim." (Citations omitted; internal quotation marks omitted.) *Atkinson* v. *Commissioner of Correction*, 125 Conn. App. 632, 638–39, 9 A.3d 407 (2010).

On the basis of our review of the record, we conclude that the petitioner has failed to demonstrate that there is a reasonable probability that if Aspinwall had impeached Young on the basis of his prior inconsistent statement, the jury would have had a reasonable doubt

respecting the petitioner's guilt. Even if we were to assume, arguendo, that Aspinwall's failure to impeach Young on the basis of his inconsistent statement constituted deficient performance, we agree with the habeas court's assessment that no prejudice resulted from that deficiency, particularly in light of the fact that Young's testimony was cumulative of many of the state's witnesses.[2] Therefore, as the petitioner has failed to sustain his burden of showing prejudice, he also has failed to show that the resolution of the underlying claim involves issues that are debatable among jurists of reason, that a court could resolve the issues differently or that the questions are adequate to deserve encouragement to proceed further. Accordingly, we conclude that the court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

---

[2] The record reveals that the jury heard from five police officers who testified that, on two separate occasions, they observed Young handing money to the petitioner in exchange for cocaine.