HERMINIO SOTOMAYOR *v.* COMMISSIONER
OF CORRECTION
(AC 32940)

Beach, Robinson and Bear, Js.

---

[6] See footnote 3 of this opinion.

Submitted on briefs January 13—officially released April 24, 2012

*Laljeebhai R. Patel* filed a brief for the appellant (petitioner).

*John C. Smriga,* state's attorney, and *Adam E. Mattei,* special deputy assistant state's attorney, filed a brief for the appellee (respondent).

*Opinion*

ROBINSON, J. The petitioner, Herminio Sotomayor, appeals following the habeas court's denial of his petition for certification to appeal from the court's judgment denying his revised amended petition for a writ of habeas corpus. The petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal and improperly rejected his claim that his trial counsel had provided ineffective assistance at sentencing by failing to prepare properly and to present sufficient mitigation evidence. We dismiss the appeal.

This court set forth the facts giving rise to this matter in *State* v. *Sotomayor,* 61 Conn. App. 364, 765 A.2d 1 (2001), appeal dismissed, 260 Conn. 179, 794 A.2d 996, cert. denied, 537 U.S. 922, 123 S. Ct. 313, 154 L. Ed. 2d 212 (2002). "During the late evening of October 10, 1989, sixteen year old Angel Lauriano and several friends

were hurling eggs at passing vehicles on William Street in Bridgeport. At approximately 11 p.m., one of the eggs hit a passing vehicle. The driver, who later was identified as the [petitioner], immediately stopped and emerged from the vehicle armed with a rifle. The [petitioner] chased the fleeing teenagers. Upon nearing Lauriano, the [petitioner] shot the youth six times from behind. Lauriano died from multiple gunshot wounds.

"Lauriano's murder remained unsolved until 1998. In April, 1998, Bridgeport police arrested the [petitioner's] cousin, Manuel Arvelo, on an unrelated drug offense. While in custody, Arvelo asked to speak with a detective. Arvelo informed Detective Leonard Sattani of the Bridgeport police department that he had information about Lauriano's death and that his cousin, the [petitioner], had committed the murder. In a written statement dated April 13, 1998, Arvelo averred: 'I saw my cousin stop and get out of his car with this rifle and chase this kid down and shoot him up. . . . I saw the kid bending down saying don't shoot me, he shot him, he emptied out the rifle on him, close range, I was right there.' Arvelo gave a second statement on April 15, 1998, in which he reiterated much of the information that he had provided in his earlier statement. Arvelo swore to and signed each statement.

"On April 17, 1998, Bridgeport police executed a warrant for the [petitioner's] arrest. After waiving his rights to remain silent and to the assistance of counsel, the [petitioner] gave a written statement in which he confessed to shooting Lauriano. The [petitioner] recounted the incident as follows: 'I was going down Noble [Avenue] to William [Street]. They started to throw eggs at my car, and it was dark at that time, I got out of the car and I was armed, I saw someone running and I went around this house and I saw this guy coming out and he ran toward me and I did not know if he had a gun, I reacted and I fired several shots. I ran back to the

car.' The [petitioner] further stated that he fired about seven or eight shots." Id., 366–67.

Throughout the criminal trial and sentencing, attorney David M. Abbamonte of the public defender's office represented the petitioner. A jury found the petitioner guilty of murder in violation of General Statutes § 53a-54a (a), which carries a sentence of imprisonment for a term of not less than twenty-five years nor more than sixty years. General Statutes §§ 53a-35a and 53a-35b. At the sentencing hearing, the court heard from the prosecutor, the victim's sister, Abbamonte and the petitioner. The court sentenced the petitioner to a total effective sentence of fifty years incarceration. The petitioner unsuccessfully appealed his murder conviction. See State v. Sotomayor, supra, 61 Conn. App. 365–66.

On October 18, 2010, the petitioner filed a revised amended petition for a writ of habeas corpus that alleged ineffective assistance of trial counsel. The petitioner alleged that Abbamonte provided ineffective assistance by, inter alia, failing to prepare and to present sufficient mitigation evidence at sentencing.[1] At the

[1] In his revised amended petition, the petitioner claimed that Abbamonte was ineffective because he failed: (1) to prepare the petitioner adequately for trial by reviewing the state's evidence, including adverse witness statements and by failing to investigate how the petitioner's claims of head trauma, poor brain development or age impacted his intent to commit the crime charged; (2) to file a motion to suppress or limit the use of the petitioner's statements; (3) to negotiate properly or to advise the petitioner of pretrial settlement offers; (4) to investigate properly applicable law as to a defense or possible lesser sentence and (5) to prepare and to present mitigation evidence at sentencing. At the habeas trial, following the conclusion of witness testimony and prior to arguments, the petitioner, through his counsel, withdrew all but two allegations of ineffective assistance. Specifically, counsel stated: "I would like to restrict the issues that we are pursuing. The other issues are being withdrawn to the extent that I do not believe that the law and/or facts have been presented that would support those claims. The main claims that we are focusing on, however, are the claims with respect to the failure to properly advise and assist the petitioner with respect to resolving his case short of trial through a plea bargain negotiation . . . as well as the failure to properly present mitigation evidence at the time of sentencing." The habeas court's decision rejects both claims. On

habeas trial, the court heard testimony from the petitioner, the petitioner's mother and the petitioner's two experts—Clinton J. Roberts, a sentencing and mitigation consultant, and attorney Gary A. Mastronardi, the petitioner's legal expert. Abbamonte, who died prior to trial, was not available to testify.[2]

On November 4, 2010, the habeas court issued an oral decision rendering judgment denying the habeas corpus petition. The court rejected the petitioner's claim that Abbamonte had been ineffective at sentencing. The court acknowledged and agreed with the petitioner's opinion that Abbamonte "could have been longer in his sentencing remarks . . . ." The court noted, however, that it was the sentencing court's duty to consider thoroughly all mitigating and aggravating factors brought to the sentencing court's attention and that the sentencing court was capable of assessing the importance of each factor regardless of how much emphasis was placed on any given factor by the defense counsel. The habeas court found that Abbamonte had performed reasonably given that he had "very little to work with" in terms of actual mitigating evidence. The habeas court found that "[t]here was no significant evidence of mitigation introduced in this trial that counsel should have brought out at the time of sentencing."

appeal, however, the petitioner has not raised or briefed any challenge to the habeas court's denial of his petition as to the claim that Abbamonte was ineffective regarding pretrial settlement, and, therefore, that issue is deemed abandoned. See *Atkinson* v. *Commissioner of Correction*, 125 Conn. App. 632, 636 n.5, 9 A.3d 407 (2010), cert. denied, 300 Conn. 919, 14 A.3d 1006 (2011). Accordingly, the only claim of ineffective assistance of counsel relevant to the present appeal concerns Abbamonte's presentation of mitigation evidence at sentencing, and we limit our review accordingly.

[2] Public records reveal that Abbamonte died in February, 2006. In its oral ruling, the habeas court noted the apparent prejudice to the state as a result of Abbamonte's unavailability and the fact that more than five years passed from the affirmance of the petitioner's conviction to the commencement of the habeas action. It further noted, however, that the state failed to raise the equitable defense of laches, and, thus, it was necessary to reach the merits of the claims raised in the petition.

The habeas court recognized that the petitioner, in his testimony at trial, completely denied any responsibility for the victim's death, claiming that he was not in the area on the date of the shooting. The court also noted that the petitioner "at sentencing showed no remorse . . . ." The court acknowledged that the nature of the crime committed is a vitally important factor at sentencing, and that, in this case, the crime was particularly egregious in nature because of the defendant's violent and grossly disproportionate reaction to his car being egged. Ultimately, on the basis of the habeas court's review of all the evidence available for consideration by the sentencing court, the habeas court concluded that "there is no reason to believe that anything that an expert could have raised in assisting defense counsel, or defense counsel on his own, or any other mitigation evidence would likely have, or creates a reasonable probability that the sentence in this case, when one considers all the facts and factors that a trial judge has to consider, would have changed the sentence of fifty years." Accordingly, the court denied the habeas petition. The habeas court subsequently denied the petition for certification to appeal. This appeal followed.

We begin our analysis by setting forth our well settled standard of review as well as other applicable legal principles. "In a habeas appeal, although this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v.

*Warden,* 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Synakorn* v. *Commissioner of Correction,* 124 Conn. App. 768, 771, 6 A.3d 819 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1004 (2011).

"A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment." (Internal quotation marks omitted.) *Gooden* v. *Commissioner of Correction,* 127 Conn. App. 662, 668, 14 A.3d 1066, cert. denied, 301 Conn. 913, 19 A.3d 1259 (2011). "In *Strickland* [v. *Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct

from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Minnifield* v. *Commissioner of Correction*, 62 Conn. App. 68, 71–72, 767 A.2d 1262, cert. denied, 256 Conn. 907, 772 A.2d 596 (2001).

"To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . With respect to the prejudice component, [i]t is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. . . . A court need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim." (Internal quotation marks omitted.) *Gooden* v. *Commissioner of Correction*, supra, 127 Conn. App. 668. "The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Joseph* v. *Commissioner of Correction*, 117 Conn. App. 431, 433, 979 A.2d 568, cert. denied, 294 Conn. 906, 982 A.2d 1080 (2009).

In the present case, the petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal because whether his trial

counsel adequately investigated and presented mitigating factors at his sentencing hearing and whether that alleged deficient performance prejudiced the petitioner are issues that are debatable amongst reasonable jurists, could be resolved in a different manner or deserve encouragement to proceed further. In support of that claim, the petitioner argues that the court "erred in discounting the petitioner's experts' testimonies that [Abbamonte's] performance measured against an 'objective standard of reasonableness,' was deficient and that but for that deficient performance the result [at sentencing] would have been better." We disagree.

The petitioner testified at the habeas trial that he met with Abbamonte only two times prior to his trial. He testified that Abbamonte never discussed with him the evidence the state had against him nor told him that his cousin was going to testify against him. He further maintained that he and Abbamonte never discussed a plea bargain. He also testified that he remembered telling Abbamonte that he was using drugs. The petitioner also claimed that Abbamonte never prepared him prior to testifying at his criminal trial or for sentencing. The habeas court expressly stated that it could not credit the petitioner's testimony because either too much time had passed for the petitioner to remember accurately what his counsel had done or the petitioner's memory "has become very selective." In other words, the habeas court questioned the reliability of the petitioner's testimony. We must accept the habeas court's credibility assessment. See *Joseph* v. *Commissioner of Correction*, supra, 117 Conn. App. 433.

The petitioner's experts testified that they had reviewed the presentence investigation report (PSI), the police report and the sentencing transcript. Mastronardi, the petitioner's legal expert, opined that Abbamonte was ineffective because he failed to address adequately what he described as key mitigation factors:

the petitioner's age at the time the crime was committed, the "provocation" of the petitioner by the victim combined with what Mastronardi claimed were learning disabilities,[3] and the petitioner's alleged drug and alcohol problem. Roberts, the petitioner's sentencing and mitigation expert, who also interviewed the petitioner, opined that the PSI was "a bit sterile," meaning, in his opinion, that the PSI did not contain a lot of information that would have been helpful to the defense or to the court. Roberts claimed that the petitioner had informed him during his interview about a serious concussion he had suffered at the age of fourteen, about abuse that took place when he was a child and about his abuse of drugs, including at the time of the murder. None of this information, however, was in the PSI. Roberts opined that if this information had been uncovered through an investigation by Abbamonte, the information could have been brought to the attention of the PSI author or to the judge at sentencing. On cross-examination, however, Roberts acknowledged that the petitioner maintained that he had no substance abuse or mental health problems throughout the proceedings and when he spoke to the probation officer who prepared the PSI. Roberts also agreed that there was nothing in the PSI that necessarily should have led Abbamonte to believe that any additional investigation into substance abuse or mental health issues was warranted.

"The right to counsel . . . is the right to effective assistance and not the right to perfect representation." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 36 Conn. App. 695, 701, 652

[3] The educational background information in the PSI indicates that the petitioner only attended school through the eighth grade, but "[t]he [petitioner] states that he is fully literate and . . . he adequately responded to all questions and appeared to be within a general range of intellectual functioning."

A.2d 1050, cert. denied, 233 Conn. 912, 659 A.2d 183 (1995). The transcript reveals that Abbamonte brought to the sentencing court's attention that the petitioner was only eighteen at the time of the murder, one of the key mitigation factors according to Mastronardi. Abbamonte conveyed to the sentencing court the petitioner's apparent lack of a significant drug or alcohol problem, which was consistent with his client's position throughout the proceedings and the PSI, to which the court responded, "[t]hat's good," suggesting that the court viewed the lack of drug and alcohol abuse as a positive factor. Abbamonte highlighted the petitioner's lack of an extensive criminal record between the time of the murder and his arrest ten years later.[4] He also mentioned that the petitioner had been employed. Abbamonte chose not to speak of any justification for or reasoning behind the crime, or to the issue of the petitioner's remorse, which was a reasonable strategy given the petitioner's position at trial, in the PSI and at sentencing that he did not commit the murder.

Because of Abbamonte's death, he was unavailable to testify as to the nature of his strategy at the sentencing hearing. Although the petitioner's experts made much of the fact that Abbamonte did not address the petitioner's drug abuse or mental health issues, there is no indication that he had any reason to question the petitioner's consistent position that he had no such issues. Although Abbamonte's oral presentation at the sentencing hearing was of a relatively short duration, he brought a number of important factors to the court's attention for consideration. Mindful that counsel is entitled to a strong presumption that his conduct fell within the range of adequate professional conduct; *Santiago* v. *Commissioner of Correction*, 125 Conn. App. 641,

---

[4] The petitioner was arrested in 1990 and convicted in 1993 for carrying a pistol without a permit and for failure to appear.

648, 9 A.3d 402 (2010); we cannot conclude that a reasonable jurist reviewing the sentencing hearing as a whole and the mitigation information available to Abbamonte would debate that counsel satisfied his duty to provide constitutionally effective representation.

Even if we accepted the petitioner's argument that jurists reasonably could disagree as to whether Abbamonte provided less than effective representation, given the highly egregious nature of the murder in this case, it is unlikely that the petitioner would prevail on the prejudice prong of *Strickland*. The petitioner could have received a sentence of between twenty-five to sixty years, so the fifty year sentence he received, although on the higher end of the spectrum, was not the maximum sentence that the court could have imposed. See General Statutes §§ 53a-35a and 53a-35b. The preference of the victim's family for the maximum sentence was noted in the PSI. The recommendation in the PSI was that the court should impose an extended period of incarceration "due to the serious magnitude of the instant offense which outweighs any significant, positive factors in the [petitioner's] background." The habeas court stated: "[T]he offense conduct itself is a vitally important factor that the court considers in sentencing. This murder was brutal and callous. As the PSI brings out, the petitioner chased down and shot a seventeen year old boy simply because the boy had thrown eggs at the petitioner's car. The petitioner shot the victim eight times, which revealed to the trial judge, as he stated, the petitioner's real cowardice and brutality. The petitioner stopped shooting only because he ran out of bullets." The habeas court ultimately concluded that no amount of additional argument regarding possible mitigation factors or testimony by a mitigation expert would have created a reasonable probability that the petitioner would have received a lesser sentence. We cannot conclude that reasonable jurists could debate

that the petitioner would have received a lesser sentence even if Abbamonte had presented the mitigation evidence to the sentencing court in the manner prescribed by the petitioner's experts. Because we conclude on the basis of our review of the record that the petitioner has failed to demonstrate that a reasonable jurist could find that counsel's performance at sentencing was ineffective or, if ineffective, that his performance prejudiced the petitioner such that he likely would have received a lesser sentence, we ultimately conclude that the habeas court did not abuse its discretion by denying the petitioner certification to file the present appeal.

The appeal is dismissed.

In this opinion the other judges concurred.