## CAESAR O'NEIL *v.* COMMISSIONER OF CORRECTION
### (AC 33070)

Robinson, Sheldon and Flynn, Js.

Argued February 7—officially released April 23, 2013

*Brittany Bussola Paz*, with whom, on the brief, were *Norman A. Pattis* and *Daniel M. Erwin*, for the appellant (petitioner).

*Linda Currie-Zeffiro,* assistant state's attorney, with whom, on the brief, were *John C. Smriga,* state's attorney, and *Gerard P. Eisenman,* former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Caesar O'Neil, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus following its denial of his petition for certification to appeal. The petitioner claims that the court improperly rejected his claim that his trial counsel had provided constitutionally ineffective assistance by failing to object to certain hearsay testimony related to the pretrial identification of the petitioner as the perpetrator of the alleged crimes.[1] Prior to oral argument before this court, we ordered the petitioner to file a supplemental brief addressing the threshold issue of whether the habeas court had abused its discretion by denying his petition for certification to appeal. We conclude that the court did not abuse its discretion and, therefore, dismiss the appeal.

The petitioner was convicted, following a jury trial, of murder in violation of General Statutes § 53a-54a (a), attempt to commit murder in violation of General Statutes § 53a-49 (a) (2), assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and criminal attempt to tamper with a witness in violation of General Statutes §§ 53a-49 (a) (2) and 53a-151 (a). His convictions were affirmed on appeal. See *State* v. *O'Neil,* 67 Conn. App. 827, 837, 789 A.2d 531 (2002).

---

[1] The amended petition for a writ of habeas corpus contained a number of additional allegations of ineffective assistance, as well as a claim of actual innocence. After the habeas trial, the habeas court denied the remainder of the petition "on the grounds of either procedural default, clear lack of evidence, or abandonment of the claim." That ruling is not challenged on appeal.

The relevant facts underlying the convictions are as follows. "During the early morning hours of June 25, 1993, two shootings involving the same weapon occurred in Bridgeport within a brief period of time. One of four individuals occupying a car fired a gun from the rear passenger seat, hitting two men, Rafael Rodriguez and Juan Miles. Rodriguez died from the injuries he sustained, and Miles was injured by a bullet that went through his leg. Shortly thereafter, a second shooting occurred. Donald Vernon, while attempting to use a pay telephone, was hit by a bullet that came from the rear passenger seat of a car that was identical to the one involved in the earlier shooting.

"The investigation that followed led the police to suspect the [petitioner] as the shooter in both incidents. From 1993 through 1997, the Bridgeport police department, including its fugitive task force, attempted to locate the [petitioner], without success. On March 14, 1997, the [petitioner] was arrested in connection with the June 25, 1993 shootings. He was charged with murder as a result of the first shooting, and attempt to commit murder and assault in the first degree as a result of the second shooting.

"While the [petitioner] was incarcerated and awaiting trial, officials at the Walker Reception Center intercepted a coded letter that he had sent to his mother. The letter, when deciphered, informed the [petitioner's] mother to get a message to one of the [petitioner's] associates. The [petitioner] attempted to establish an alibi for the time of the shooting and to make sure that Vernon did not testify. Subsequently, the [petitioner] was charged with criminal attempt to tamper with a witness." Id., 829–30. The charges against the petitioner were consolidated for trial. Id., 830. The petitioner's trial counsel was Attorney Lawrence Hopkins.

Vernon testified at trial that the petitioner was the person who had shot him. He also testified about a

pretrial interview that he had given to Detective William Perez of the Bridgeport police department. Vernon admitted that at the beginning of the interview he had identified the petitioner only as one of the occupants of the car involved in the shooting, but not as the shooter. After additional inquiry by Perez, however, Vernon ultimately told Perez that the petitioner had shot him. Vernon testified that his initial reluctance in identifying the petitioner stemmed from threats that Vernon had received against him and his family. Vernon was cross-examined by Hopkins about his prior inconsistent statements regarding his ability to identify his assailant. In particular, Hopkins elicited from Vernon on cross-examination that Vernon had told a police sergeant at the hospital shortly after the shooting that he had no idea who had shot him. Hopkins also got Vernon to agree on the record that when he claimed that he saw the petitioner shoot him, he, in fact, was relying on statements by other people at the crime scene who had told him that the petitioner was the shooter. Vernon nevertheless reasserted on redirect that he saw the petitioner shoot him, just as he had indicated in his interview with Perez.

Perez also testified at the criminal trial about Vernon's pretrial interview and identification of the petitioner. On cross-examination, Hopkins asked Perez whether prior to interviewing Vernon he had been made aware "that [Vernon] had told at least one maybe more officers that he couldn't be of any help to them, he didn't know who shot him." Perez answered: "[Vernon] had told one other officer that he in fact knew who had shot him." Hopkins did not object to or move to strike that answer as hearsay. Instead, he asked Perez whether he was aware of any report that would corroborate his previous statement. Perez responded in the negative and later agreed with Hopkins' statement that Vernon's interview with Perez was the first time that Vernon

had indicated that the petitioner was responsible for shooting him. Hopkins made two more attempts to elicit from Perez whether, at the time he had interviewed Vernon, Perez had been aware of Vernon's statement to the officer at the hospital that he could not identify his shooter. Perez first repeated his testimony that he "only had knowledge that—from one officer that he did." The second time he simply stated that he "wasn't aware of that." On redirect, Perez again testified, without eliciting any objection from Hopkins, that he had pressed Vernon during his interview because an officer had told him that Vernon could identify his shooter. Ultimately, the jury found the petitioner guilty on all counts charged.

The petitioner filed the operative amended petition for a writ of habeas corpus on July 31, 2009. The petitioner alleged, inter alia, that he was deprived of his constitutional right to the effective assistance of counsel because of Hopkins' failure to make timely objections to hearsay testimony given at trial by Perez during cross-examination and on redirect that, prior to interviewing Vernon, Perez had been told by another unnamed officer that Vernon knew who had shot him and that the shooter was the petitioner. The petitioner argues that Perez' hearsay testimony unfairly bolstered the direct testimony given by Vernon that the petitioner was the shooter.

Following the habeas trial, the court issued its memorandum of decision denying the petition for a writ of habeas corpus. The court found that Hopkins had acted "within the acceptable range of performance" and that the petitioner had failed to present any evidence from which the court could conclude that the outcome of the trial would have been different but for the hearsay testimony of Perez. The court subsequently denied the petitioner's petition for certification to appeal. This appeal followed.

"In a habeas appeal, although this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test . . . adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Citation omitted; internal quotation marks omitted.) *Synakorn* v. *Commissioner of Correction*, 124 Conn. App. 768, 771, 6 A.3d 819 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1004 (2011).

"A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Because

both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Gooden* v. *Commissioner of Correction*, 127 Conn. App. 662, 668, 14 A.3d 1066, cert. denied, 301 Conn. 913, 19 A.3d 1259 (2011).

"[T]he decision of a trial lawyer not to make an objection is a matter of trial tactics, not evidence of incompetency. . . . [T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Citation omitted; internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, 80 Conn. App. 792, 801, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413, cert. denied sub nom. *Toccaline* v. *Lantz*, 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004). An "[e]xperienced [litigator may] utilize the trial technique of not objecting to inadmissible evidence to avoid highlighting it in the minds of the jury." (Internal quotation marks omitted.) *State* v. *Davis*, 76 Conn. App. 653, 665, 820 A.2d 1122 (2003).

Although Hopkins did not object to Perez' hearsay statement, he obtained Perez' admission that there was no report or other evidence that corroborated the statement, thus minimizing its impact on the jury without highlighting the testimony with an objection. Hopkins also effectively cross-examined Vernon regarding his prior inconsistent statements. Although Hopkins testified at the habeas trial regarding his general defense strategy, he was never asked to explain why he chose not to object to Perez' hearsay testimony. The petitioner also presented no expert testimony to the habeas court regarding whether Hopkins' actions fell outside of the range of acceptable performance by a criminal defense attorney. On the basis of the limited evidence before it, the habeas court found "the strategic and tactical decisions of [trial] counsel, as well as the manner in

which he carried them out to be within the acceptable range of performance." Our review of the record leads us to conclude that the habeas court's finding was not clearly erroneous, nor could a reasonable jurist have reached a different conclusion regarding Hopkins' performance on the basis of the evidence presented. Similarly, with regard to proof of the prejudice prong, the habeas court found that even if it presumed that Hopkins' performance was deficient, the petitioner "did not present any evidence at the habeas trial" from which to conclude "that there was any likelihood that the outcome of the trial would have been any different." That finding likewise is supported by our review of the record.

In sum, having thoroughly reviewed the record and the issues raised by the petitioner on appeal, we are left to conclude that the habeas court correctly applied the law and reasonably could have reached only the conclusion that it did. The petitioner has not met his burden under *Simms* v. *Warden*, supra, 230 Conn. 612, of showing that the habeas court abused its discretion in failing to grant his petition for certification to appeal from the judgment denying his petition for a writ of habeas corpus.

The appeal is dismissed.