## DANIEL SANTIAGO v. COMMISSIONER OF CORRECTION
### (AC 31001)

DiPentima, C. J., and Alvord and Mihalakos, Js.

Argued October 21—officially released December 21, 2010

*Alan Jay Black*, special public defender, for the appellant (petitioner).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Brenda Hans*, deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Daniel Santiago, appeals following the habeas court's denial of his petition for certification to appeal from the judgment denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court abused its discretion when it denied his petition for certification to appeal and improperly rejected his claim that his trial counsel rendered ineffective assistance. More specifically, the petitioner claims that trial counsel failed to present an alternative intoxication defense and to object to several alleged prosecutorial improprieties. We dismiss the appeal.

The facts underlying the petitioner's conviction were set out at length in *State* v. *Santiago*, 73 Conn. App. 205, 208–11, 807 A.2d 1048 (2002), rev'd in part, 269 Conn. 726, 850 A.2d 199 (2004). "On November 26, 1997, the victim's brother, Craig Pitts, saw the victim, Barrett Applewhite, and the [petitioner] having 'a few words' outside of an apartment building at 39 Wadsworth Street, Hartford. About one week earlier, Applewhite had 'fronted' the [petitioner] cocaine to sell, and the [petitioner] had agreed to pay Applewhite $500 after he sold the drugs. Although Pitts did not know what was said, the situation did not appear to him to be very serious, and Applewhite and the [petitioner] soon went their separate ways. Afterward, Applewhite told Pitts that the [petitioner] was 'crazy' and that he did not know what was wrong with him, but he did not give any details.

"That evening, Applewhite, Michael Ibscher and Stephen Gomes drove to 39 Wadsworth Street to visit Jessica Gonzalez and Maureen Jackson. After a while, they decided to take Applewhite and a two year old child who was visiting Jackson to the child's home on Franklin Avenue, to drop off Gonzalez' friend, Rocio Castro, at her house and then to drive to Massachusetts to purchase liquor. They entered a Lincoln Navigator sport utility vehicle that was parked in front of the building. Ibscher drove, Applewhite sat in the front passenger seat and Gomes, Castro, Gonzalez and Gonzalez' cousin, Jennifer Colon, sat in the backseat. As they drove away from the building and proceeded along Wadsworth Street, Applewhite received a call on his cellular telephone informing him that they had forgotten to bring the two year old child with them. Ibscher thereupon backed up the vehicle all the way to the front of 39 Wadsworth Street and parked. Jackson brought the child downstairs to the vehicle and put her on Gomes' lap.

"At about that same time, the [petitioner], wearing dark pants and a black hooded sweatshirt with the hood up, crossed Wadsworth Street and walked to the parked vehicle. He looked in the front passenger window directly at Applewhite and started 'talking junk,' saying, 'What? What?' Applewhite responded, 'What's your problem?' and asked why the [petitioner] had approached the vehicle. Applewhite then said to the others, 'Let me see what's wrong with that [expletive].' Applewhite opened the door and stepped out of the vehicle to the sidewalk. He told the [petitioner] that he was acting as if they had backed up the vehicle because of him, but that was not the case. He also told the [petitioner] that they had no problem with him. The [petitioner], still facing Applewhite, moved toward the rear of the vehicle, saying, 'What? What?' Applewhite

followed the [petitioner], reiterating that they had not backed up because of him and that he should leave.

"Ibscher, noticing that the [petitioner] was 'agitated,' decided to join Applewhite to help prevent any problems. Ibscher exited the vehicle, walked to Applewhite and told him to relax, that it was a holiday and that they did not need any trouble. Neither he nor Applewhite were armed, and there were no weapons in the vehicle. Sensing that Applewhite would not advance on the [petitioner], but merely would discuss the matter with him, Ibscher moved a few feet behind Applewhite. The [petitioner], however, kept saying, 'What? What?' and appeared to be agitated, upset and dazed.

"At that time, Applewhite and the [petitioner] were standing about eight to ten feet apart. Although neither Applewhite nor Ibscher moved toward the [petitioner], he suddenly pulled out a black automatic handgun from his sweatshirt pocket and began shooting at Applewhite because he [said he] saw Applewhite reach 'into his waist.' Applewhite immediately turned away from the [petitioner] and started to run toward the building at 39 Wadsworth Street, but he was shot in the back. Ibscher told the [petitioner] that he was 'crazy,' and the [petitioner] 'swiveled' toward Ibscher and shot him, hitting him in the leg as he was running through an alley to the parking lot next to the building. In total, the [petitioner] fired six or seven shots in rapid succession. After the [petitioner's] automatic gun clicked twice, the [petitioner] turned and ran across the street and along a pathway between 54 and 60 Wadsworth Street toward a public housing project.

"In the meantime, Gomes, concerned about the safety of the women and the child, got into the driver's seat of the vehicle and sped off. They dropped off Castro at her house, called the police and drove to Franklin

Avenue to drop off the child. While on Franklin Avenue, the police stopped and searched the vehicle and questioned the remaining passengers.

"The police officers who had arrived at the crime scene tried to gather information from the victims and witnesses concerning the shooting. At the scene, Ibscher identified the shooter as 'Danger.' [Applewhite and Ibscher were taken to the hospital for treatment of their injuries. Applewhite died in the hospital from his injuries the next morning.] By running that alias through a computer and by the process of elimination, the police were able to identify the [petitioner] as a possible suspect. Thereafter, Ibscher, Gomes, Gonzalez and Castro all separately identified the [petitioner] from a photographic array. On November 29, 1997, the police obtained a warrant for the [petitioner's] arrest and sent 'wanted' flyers to the news media.

"On December 1, 1997, the [petitioner] turned himself in to the Hartford police. He agreed to be interviewed and gave a statement to the police, admitting that he shot Applewhite and Ibscher but claiming that it was in self-defense. Thereafter, the [petitioner] was arrested."

On February 25, 2000, the jury found the petitioner guilty of manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-55 (a) (1) and 53a-55a (a), and assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[1] On April 25, 2000, the petitioner was sentenced to a total effective term of sixty years imprisonment. Thereafter, the petitioner appealed to this court, which reversed the judgment of conviction on the basis of the petitioner's claim of prosecutorial misconduct. Our Supreme Court granted the state's petition for certification to appeal, and subsequently reversed in part the judgment of this court and

---

[1] The jury found the petitioner not guilty of murder in violation of General Statutes § 53a-54a (a).

remanded the case to this court as to one remaining issue. *State* v. *Santiago*, 269 Conn. 726, 728–63, 850 A.2d 199 (2004). This court affirmed the judgment of the trial court. *State* v. *Santiago*, 87 Conn. App. 754, 766, 867 A.2d 138, cert. denied, 273 Conn. 938, 875 A.2d 45 (2005).

On July 18, 2005, the petitioner filed a pro se petition for a writ of habeas corpus, which was amended by habeas counsel on June 6, 2008, alleging eleven instances of ineffective assistance of trial counsel and three instances of ineffective assistance as to appellate counsel. On March 23, 2009, a trial was held on the petitioner's habeas petition, and his claims were denied by oral decision of the court. On April 1, 2009, the court denied the petitioner's petition for certification to appeal. This appeal followed.

We initially set forth the well established standard of review and principles of law underlying the petitioner's claims. "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court *could* resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further. . . . The required determination may be made on the basis of the record before the habeas court and applicable legal principles. . . . If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits.
. . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of

the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by this court for determining the propriety of the habeas court's denial of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed. . . .

"According to the standard enunciated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), a petitioner alleging ineffective assistance of counsel must establish that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Bewry* v. *Commissioner of Correction*, 121 Conn. App. 259, 265–66, 994 A.2d 697, cert. denied, 297 Conn. 918, 996 A.2d 277 (2010).

The petitioner claims that trial counsel rendered ineffective assistance by failing to raise a defense of intoxication. We disagree with the petitioner's assertion that his trial counsel's performance was deficient.

The petitioner's counsel determined that, as a matter of trial strategy, presenting inconsistent, alternative defenses of intoxication and self-defense risked alienating the jury. For that reason, he chose to pursue a self-defense theory of the case and, in fact, convinced the jury to find the petitioner not guilty on the most serious charge of murder. The court concluded that

"trial counsel made a knowing decision not to pursue the defense of intoxication . . . [and] his decision to not pursue such defense was within his professional judgment." "[T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Citation omitted.) *Iovieno* v. *Commissioner of Correction*, 67 Conn. App. 126, 128, 786 A.2d 1113 (2001), cert. denied, 259 Conn. 916, 792 A.2d 851 (2002). On the basis of our review of the record, we conclude that the court properly determined that trial counsel's strategy was reasonable under the circumstances. We further conclude that the court properly determined that that strategy was largely successful in that the petitioner was acquitted of murder, the most serious charge that he faced. The petitioner failed to satisfy the first prong of *Strickland.* The petitioner also claims that trial counsel failed to object to several alleged prosecutorial improprieties. We conclude that the court properly determined that there is nothing in the record to suggest that trial counsel failed to preserve the record. The petitioner received full review of his claims of prosecutorial impropriety. See *State* v. *Santiago*, supra, 269 Conn. 726–63.

The petitioner has not demonstrated that the issues raised are debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions raised deserve encouragement to proceed further. The court, therefore, did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.