******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* RAMON A. G.*
(SC 20358)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.**

*Syllabus*

Convicted of assault in the third degree, the defendant appealed to the
Appellate Court, claiming that the trial court improperly had declined
to instruct the jury on the defense of personal property with respect to
the assault charge. The victim, who had been romantically involved
with the defendant, visited with the defendant during a gathering at his
mother's apartment. The victim surreptitiously took a set of car keys
belonging to the defendant's mother from that apartment and began to
walk home. The victim threw the keys into a bush along her route home,
and, shortly thereafter, the defendant emerged from a car, physically
attacked her, rummaged through her backpack for his mother's keys,
and left the area with the backpack. At trial, the defendant filed a written
request to charge, seeking an instruction on the defense of personal
property pursuant to statute (§ 53a-21). The trial court held a formal
charging conference, and defense counsel did not voice any concern
with respect to the court's draft instructions, which limited the defense
of personal property instruction to the charge of second degree robbery,
of which the defendant was found not guilty. The Appellate Court
affirmed the judgment of conviction, concluding, inter alia, that the
defendant's written request to charge was insufficient to preserve his
claim that the trial court improperly failed to instruct the jury on the
defense of personal property with respect to the assault charge and that
the defendant implicitly waived appellate review of that claim under
*State* v. *Kitchens* (299 Conn. 447). On the granting of certification, the
defendant appealed to this court. *Held*:

1. The Appellate Court correctly concluded that the defendant's claim of
   instructional error was unpreserved: the trial court clearly believed that
   it had satisfied the defendant's written request to charge on the defense
   of personal property, as that court granted the request without qualifica-
   tion, provided multiple drafts of its instructions to the parties, and
   expressly reviewed the proposed defense of personal property instruc-
   tion with counsel during a formal charging conference, and this court
   could not conclude that the trial court and the state were given fair
   notice of the fact that the defendant took issue with this particular
   aspect of its instructions on assault; moreover, although the applicable
   rule of practice (§ 42-16) allows a defendant to preserve a claim of
   instructional error by filing a written request to charge or by taking an
   exception on the record, the information conveyed in connection with
   either of these alternatives must be specific enough to afford the trial
   court and the state fair notice of the defect subsequently claimed on
   appeal, and the record contained no indication that the defense ever
   brought to the trial court's attention that the charge on the defense of
   personal property should have been given with respect to the assault
   charge.

2. The Appellate Court correctly concluded that the defendant waived his
   unpreserved claim of instructional error: the trial court granted the
   defendant's request to charge without qualification, expressly indicating
   that it intended to incorporate that request in its proposed instructions,
   the court then drafted its charge, distributed copies to counsel, and
   reviewed the language it had proposed on the defense of personal prop-
   erty during a formal charging conference, during which the court high-
   lighted the location of the relevant instruction and discussed the content
   of the instruction with counsel, and, throughout the proceedings, the
   defense did not voice any concern regarding the location, scope or
   structure of that particular charge; accordingly, the defendant, through
   counsel, engaged in conduct demonstrating his assent to the manner
   in which the court incorporated his request to charge; moreover, the
   defendant possessed a tactical reason not to pursue a defense of personal
   property instruction with respect to the charge of assault, as the defen-

dant's testimony was that the victim was the aggressor and that any contact between them was merely the result of his attempts to escape, and, thus, the defendant could reasonably have decided to forgo the defense of personal property instruction with respect to the assault charge because his account of the events would have been conceptually inconsistent with a claim that he had intentionally, but justifiably, used force against the victim to regain possession of the car keys.

Argued May 6—officially released July 28, 2020**

*Procedural History*

Two part substitute information charging the defendant, in the first part, with the crimes of robbery in the first degree, assault in the second degree, and criminal violation of a protective order and, in the second part, with having committed an offense while on release, brought to the Superior Court in the judicial district of New Britain, where the first part of the information was tried to the jury before *Keegan, J.*; verdict of guilty of the lesser included offense of assault in the third degree and criminal violation of a protective order; thereafter, the defendant was presented to the court on a plea of guilty to the commission of an offense while on release; judgment in accordance with the verdict and the plea, from which the defendant appealed to the Appellate Court, *Keller, Elgo* and *Moll, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Jennifer B. Smith*, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Elizabeth Moseley*, senior assistant state's attorney, for the appellee (state).

*Opinion*

KAHN, J. The defendant, Ramon A. G., appeals from the judgment of the Appellate Court affirming the judgment of conviction, rendered after a jury trial, of, among other crimes, assault in the third degree in violation of General Statutes § 53a-61.[1] The defendant claims that the Appellate Court incorrectly concluded that he had (1) failed to preserve his claim that the trial court violated his constitutional rights by omitting a defense of personal property instruction with respect to the charge of assault, and (2) waived that unpreserved instructional claim. See *State* v. *Ramon A. G.*, 190 Conn. App. 483, 211 A.3d 82 (2019). We disagree with the defendant and, accordingly, affirm the judgment of the Appellate Court.

The following facts and procedural history are relevant to our consideration of the present case. The victim became romantically involved with the defendant in August, 2012. That relationship deteriorated over the months that followed, and, on March 18, 2013, a judge of the Superior Court issued a protective order prohibiting the defendant from having any contact with the victim. Although the defendant had lived with the victim previously, on that particular date, he was residing in his mother's apartment. Notwithstanding the existence of the protective order, the victim visited with the defendant during a gathering at his mother's apartment approximately four days later.[2] The victim surreptitiously took a set of car keys belonging to the defendant's mother from that apartment and began to walk home around 10:45 p.m.[3] At trial, the victim admitted to deliberately throwing those keys into a bush along her route home because she "felt like something was gonna happen . . . ."

Testimony from the victim and the defendant provided different accounts of the events that followed. The victim testified that she was carrying a backpack that night containing, among other things, her cell phone and some cash. The victim stated that, after she had discarded the keys, the defendant emerged from a nearby vehicle and proceeded to attack her. Specifically, the victim told the jury that the defendant was angry and began swinging her around by her backpack. The victim testified that she fell to the ground and that the defendant then kicked her repeatedly while wearing a set of tan Timberland boots. According to the victim, the defendant ultimately took the backpack and rummaged through it for his mother's keys, spilling her cell phone and some other contents on the ground. The victim testified that the defendant then left with her backpack. A bystander who witnessed this confrontation called 911.[4] The victim was taken to the hospital, treated, and released the following morning.[5] The victim stated that, after she returned home, the defendant sent her text messages asking to exchange the backpack for

his mother's car keys. The victim testified that, although the backpack was ultimately returned, the cash that had been inside of it was gone.

The defendant, against the advice of counsel, testified in his own defense at trial. The defendant told the jury that he exited a vehicle driven by a friend, approached the victim while she was on the sidewalk, and said "please give me my mother's keys." The defendant stated that the victim "began to swing" at him, that he grabbed her hands to stop her, and that he ended up falling on the ground repeatedly because of ice. The defendant testified that he tried to get up to leave but that the victim grabbed his foot to impede him. The defendant testified that he eventually "shook [his] foot loose," crossed the street, got into his friend's car, and left. The defendant indicated that he did not take anything from the victim that evening and that he had been wearing sneakers, not boots. The defendant told the jury that the victim's injuries must have been caused by his attempts to escape and that he "never intentionally assaulted her . . . ."[6]

The defendant had been arrested and charged with robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), assault in the second degree in violation of General Statutes § 53a-60 (a) (2), and criminal violation of a protective order in violation of General Statutes § 53a-223 (a). On the first day of trial, the defendant filed a one page request to charge, seeking an instruction on the defense of personal property pursuant to General Statutes § 53a-21. The defendant did not identify the evidentiary basis for this request or indicate to which charges it related. Instead, the defendant merely stated that "[t]he evidence supports this request."

The following day, the trial court indicated that it had received the defendant's request and that it wanted to discuss its preliminary instructions with counsel in chambers. After taking a recess, the trial court made the following statement on the record: "[W]e've had the opportunity to have a preliminary discussion on the jury charge. And I have given to each attorney a very rough draft of what I call my overinclusive jury charge. I intend to take out the areas that do not apply in this case and then to also work further on the charges with respect to the crimes that are alleged in this case. And I intend to send this out via e-mail tonight to the two attorneys so that you will have that for review tonight. *I am going to grant the defendant's request to charge the jury on defense of personal property. I will put that in there.* And [if the prosecutor has] any objections to it, [she] can do that formally tomorrow on the record." (Emphasis added.) A set of draft instructions subsequently produced by the trial court contained a defense of personal property instruction only with respect to the charge of robbery in the first degree. See footnote 8 of this opinion (quoting in part trial court's

instruction to jury).

The trial court held a formal charging conference following the close of evidence on May 18, 2016. Defense counsel indicated that he had received a copy of the court's draft instructions and had been able to review it. The court specifically indicated that it had included a defense of personal property instruction as requested by the defendant and then noted the particular page on which that instruction appeared. The state then asked if the court, in crafting the instruction for defense of personal property, had drawn from particular language from the model criminal jury instructions found on the Judicial Branch website. See Connecticut Criminal Jury Instructions § 2.8-5 (B), available at https://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited July 27, 2020). The trial court responded in the affirmative and then asked defense counsel whether he had noticed its use of the model instruction. Defense counsel responded, "I did." After the court addressed certain other issues related to its proposed instructions, it asked whether the parties had "[a]nything else." Defense counsel replied: "No, Your Honor . . . I'm all set, Your Honor. Thank you." The trial court then asked defense counsel whether he had been given sufficient time to review the draft instructions, and defense counsel responded, "[y]es, Your Honor."

During his closing argument, defense counsel stated that the defense of personal property "is a complete defense to robbery in the first degree" and then reviewed the elements of that defense in detail. Although defense counsel briefly mentioned the stolen car keys when discussing assault and criminal violation of a protective order, he did not explicitly mention the defense of personal property with respect to those charges.[7] Consistent with its draft instructions, the final version of the court's charge, electronic copies of which were provided to counsel in advance, again limited the defense of personal property instruction to the robbery count.[8] After charging the jury, the trial court asked whether there were any objections, and defense counsel replied: "No objections, Your Honor, at all."

On May 19, 2016, the jury returned a verdict finding the defendant not guilty of robbery and assault in the second degree, but guilty of the lesser included offense of assault in the third degree, and guilty of criminal violation of a protective order. The trial court rendered a judgment of conviction in accordance with that verdict and, on August 3, 2016, imposed a concurrent sentence of seven years of imprisonment for criminal violation of a protective order and one year of imprisonment for assault in the third degree, with three years of special parole.

The defendant thereafter appealed to the Appellate Court, claiming, inter alia, that "the trial court improperly declined to furnish a jury instruction on the defense

of personal property with respect to . . . assault
. . . ." *State* v. *Ramon A. G.*, supra, 190 Conn. App.
484. The Appellate Court concluded that the defendant's
written request to charge was insufficient to preserve
his particular claim of error and that the defendant had
implicitly waived appellate review of that claim under
*State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011).
*State* v. *Ramon A. G.*, supra, 500, 503. After considering
an unrelated claim of error,[9] the Appellate Court ulti-
mately affirmed the trial court's judgment. Id., 510.

We subsequently granted the defendant's petition for
certification to appeal, limited to the following issues:
(1) "Did the Appellate Court correctly conclude that
the defendant's claim of instructional error was not
preserved?" And (2) "[i]f the answer to the first question
is [yes], did the Appellate Court incorrectly conclude
that the defendant had implicitly waived his instruc-
tional claim pursuant to *State* v. *Kitchens*, [supra, 299
Conn. 447]?"[10] (Internal quotation marks omitted.) *State*
v. *Ramon A. G.*, 333 Conn. 909, 215 A.2d 735 (2019).

I

We begin by examining the issue of whether the
Appellate Court correctly concluded that the defen-
dant's claim of instructional error was unpreserved.
The defendant's sole contention with respect to this
issue is that his written request to charge adequately
notified the trial court of the particular claim he now
advances on appeal, namely, that a defense of personal
property instruction should have been given with
respect to the charge of assault. Specifically, the defen-
dant claims that he complied with our rules of practice;
see Practice Book § 42-16; and that any ambiguity relat-
ing to the scope of his request to charge should be
resolved in his favor pursuant to *State* v. *Ramos*, 271
Conn. 785, 801, 860 A.2d 249 (2004). For the reasons
that follow, we agree with the Appellate Court's conclu-
sion that the defendant's claim of instructional error
was unpreserved.

It is axiomatic that the appellate tribunals of this
state are not bound to consider claims of law that are
not distinctly raised at trial. See Practice Book § 60-5;
see also, e.g., *State* v. *Edwards*, 334 Conn. 688, 703,
224 A.3d 504 (2020). "[B]ecause the sine qua non of
preservation is fair notice . . . the determination of
whether a claim has been properly preserved will
depend on a careful review of the record to ascertain
whether the claim on appeal was articulated below with
sufficient clarity to place the trial court on reasonable
notice of that very same claim." (Internal quotation
marks omitted.) *State* v. *Dixon*, 318 Conn. 495, 500, 122
A.3d 542 (2015). "These requirements are not simply
formalities. They serve to alert the trial court to poten-
tial error while there is still time for the court to act.
. . . Assigning error to [the trial court's] rulings on the
basis of objections never raised at trial unfairly subjects

the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *State* v. *Jorge P.*, 308 Conn. 740, 753, 66 A.3d 869 (2013).

In the present case, the trial court was clearly operating under the belief that it had satisfied the defendant's written request to charge on the defense of personal property. The trial court granted that request without qualification, provided multiple drafts of its instructions to the parties, and then expressly reviewed the proposed defense of personal property instruction with counsel during a formal charging conference. On the basis of the record presently before us, we simply cannot conclude that the trial court and the state were given fair notice of the fact that the defendant took issue with this particular aspect of its instructions on assault. See *State* v. *Ross*, 269 Conn. 213, 335–36, 849 A.2d 648 (2004) ("the essence of the preservation requirement is that *fair notice* be given to the trial court of the party's view of the governing law and of any disagreement that the party may have had with the charge actually given" (emphasis in original)); cf. *Begley* v. *Kohl & Madden Printing Ink Co.*, 157 Conn. 445, 453–54, 254 A.2d 907 (1969) ("The trial court specifically corrected this portion of the charge after the plaintiffs excepted to it, and no further exception was taken by the plaintiffs. There is therefore no claim of error properly before us.").

The defendant correctly notes that our rules of practice permit criminal defendants to preserve claims of instructional error by filing a timely written request to charge. See Practice Book § 42-16;[11] see also, e.g., *State* v. *Paige*, 304 Conn. 426, 433–34, 40 A.3d 279 (2012). Appellate decisions, however, consistently reject the suggestion that this provision allows defendants to rely on general or ambiguous language to preserve more specific claims of error. See *State* v. *Ramos*, 261 Conn. 156, 170–71, 801 A.2d 788 (2002) ("[i]t does not follow, however, that a request to charge addressed to the subject matter generally, but which omits an instruction on a specific component, preserves a claim that the trial court's instruction regarding that component was defective" (emphasis omitted)), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014); *State* v. *Carter*, 198 Conn. 386, 395 and n.6, 503 A.2d 576 (1986) (written request to charge applying statutory definition of insanity was insufficient to preserve defendant's claim that additional instructions on common-law definitions was improper); see also *State* v. *Johnson*, 165 Conn. App. 255, 284–85, 138 A.3d 1108 ("Under either method, some degree of specificity is required, as a general request to charge or exception will not preserve specific claims. . . . Thus, a claim concerning an improperly delivered jury instruction will not be preserved for appellate review by a request to charge that does not address the specific component at issue . . . or by an exception that fails to articulate

the basis relied upon on appeal with specificity." (Citations omitted.)), cert. denied, 322 Conn. 904, 138 A.3d 933 (2016); *State* v. *Cook*, 8 Conn. App. 153, 156–57, 510 A.2d 1383 (1986) (exception to charge on different ground was not sufficient to preserve alternative claim of error with respect to same instruction). Put differently, although § 42-16 allows a defendant to preserve a claim of instructional error by filing a written request to charge *or* by taking an exception on the record, the information conveyed by either of these alternative means must be specific enough to afford the trial court and the state fair notice of the particular defect subsequently claimed on appeal.[12]

The defendant claims that *State* v. *Ramos*, supra, 271 Conn. 785, established a legal presumption that requires this court to resolve any ambiguity regarding the scope of his written request to charge in his favor. We disagree. The defendant in that case, who was charged with assault in the second degree and having a weapon in a motor vehicle, requested that the trial court instruct the jury on the affirmative defense of self-defense. Id., 787, 800. As in the present case, that request did not specify the count or counts at issue. Id., 800. The state then filed a supplemental request to charge asking the trial court to affirmatively instruct the jury that self-defense was not a defense to the crime of having a weapon in a motor vehicle. Id. After considering the matter, the trial court in that case ultimately "gave a self-defense instruction with respect to the assault charge, but . . . instructed the jury that self-defense was not a defense to the charge [of having a weapon in a motor vehicle]." Id. On appeal, we held that the defendant's challenge to the latter was preserved, concluding that, "[a]lthough . . . the record leaves some doubt as to whether the defendant's general request to charge was adequate to place the trial court on notice that he believed that the claim of self-defense applied to both charges, we read the failure to specify as an indication that it applied to both charges . . . ." Id., 801.

We agree with the Appellate Court's assessment that our decision in *State* v. *Ramos*, supra, 271 Conn. 785, is distinguishable for two distinct reasons. First, the defendant in the present case affirmatively disclaims any argument that a defense of personal property instruction should have been given with respect to the charge of criminal violation of a protective order. As a result of that concession, the defendant cannot maintain that his submission was a blanket request that should have been read to apply to all of the charges against him. See *State* v. *Ramon A. G.*, supra, 190 Conn. App. 496 and n.9. Second, the trial court in *State* v. *Ramos*, supra, 801, expressly considered the question of whether to instruct the jury on self-defense with respect to the crime of having a weapon in a motor vehicle and purposely declined to provide such an

instruction. As previously noted in this opinion, "the sine qua non of preservation is fair notice . . . ." (Internal quotation marks omitted.) *State* v. *Dixon*, supra, 318 Conn. 500. The record before us contains no indication that the particular instructional error claimed in the present appeal—that a charge on the defense of personal property should have been given with respect to the charge of assault—was ever brought to the trial court's attention, and, accordingly, we conclude that the defendant's claim was not preserved.[13]

## II

We turn next to the question of whether the Appellate Court correctly concluded that the defendant waived this unpreserved claim of instructional error. We note at the outset that this question raises an issue of law over which we exercise plenary review. See, e.g., *State* v. *Davis*, 311 Conn. 468, 477, 88 A.3d 445 (2014). Although we agree with the Appellate Court's finding of waiver, we reach that conclusion on the basis of defense counsel's conduct with respect to the instruction at issue, rather than his general review and acceptance of the trial court's proposed instructions as a whole pursuant to *Kitchens*.

It is well established that "[a] constitutional claim that has been waived does not satisfy the third prong of [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015)][14] because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial . . . ." (Footnote added; internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 809, 155 A.3d 209 (2017). "[W]aiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. . . . In order to waive a claim of law . . . [i]t is enough if he knows of the existence of the claim and of its reasonably possible efficacy. . . . Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim presented on appeal and affirmatively acquiesces to the trial court's order, that party waives any such claim [under *Golding*]." (Citation omitted; internal quotation marks omitted.) Id. "Such a determination by the reviewing court must be based on a close examination of the record and the particular facts and circumstances of each case." (Internal quotation marks omitted.) Id., 810.

We need not rely on the central holding of *Kitchens* in order to conclude that the defendant waived his claim of instructional error.[15] The trial court in the present

case granted the defendant's request to charge without qualification and expressly indicated that it intended to incorporate that request in its proposed instructions. The trial court then drafted its charge, distributed electronic copies to counsel, and reviewed the language it had proposed on the defense of personal property during a charging conference with counsel, held on the record. During that conference, the trial court not only highlighted the precise location of the relevant instruction, but also engaged in a discussion with counsel regarding its content. Throughout these proceedings, the defense did not voice any concern regarding the location, scope, or structure of that particular charge.

We conclude that the defendant, through counsel, engaged in conduct clearly demonstrating his assent to the manner in which the trial court incorporated his request to charge. See *State* v. *Fabricatore*, 281 Conn. 469, 481–82, 915 A.2d 872 (2007) (defendant waived claim that trial court improperly included duty to retreat exception by failing to object to state's original request to charge, failing to object to instruction as given, expressing satisfaction with instruction, failing to object at trial when state referred to duty to retreat in closing argument, and referring to duty to retreat in his own closing argument); see also *State* v. *Holness*, 289 Conn. 535, 542, 544–45, 958 A.2d 754 (2008) (unpreserved constitutional claim was waived when defendant expressed satisfaction with limiting instruction and took no exception). Although the burden of proof with respect to the defense of personal property ultimately falls to the state to disprove that defense, the defendant retained the responsibility of asserting that defense in the first instance. See *State* v. *Ebron*, 292 Conn. 656, 695, 975 A.2d 17 (2009) ("assertion and proof of the justification defense . . . remains the defendant's responsibility in the first instance"), overruled in part on other grounds by *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011).

A finding of waiver in the present case is further supported by the fact that the defendant possessed a tactical reason not to pursue a defense of personal property instruction with respect to the charge of assault. See *State* v. *Kitchens*, supra, 299 Conn. 479–80 (noting previous line of cases finding waiver "when defense counsel did not object to the challenged instruction for what clearly appeared . . . to have been tactical reasons"). The defendant's testimony, which was echoed by defense counsel during closing argument, was that the victim was the aggressor and that any contact between them was merely the result of his attempts to escape. The defendant specifically testified that the victim's injuries must have occurred when he tried to shake his leg loose from the victim's grasp and that he had "never intentionally assaulted" the victim. The defendant could reasonably have decided to forgo the defense of personal property instruction with

respect to the charge of assault because his own sworn account of the events on the night in question would have been conceptually inconsistent with a legal claim that he had intentionally, but justifiably, used force against the victim in order to regain possession of his mother's car keys. See, e.g., *Santiago* v. *Commissioner of Correction*, 125 Conn. App. 641, 647, 9 A.3d 402 (2010) ("[t]he petitioner's counsel determined that, as a matter of trial strategy, presenting inconsistent, alternative defenses of intoxication and self-defense risked alienating the jury"), cert. denied, 300 Conn. 910, 12 A.3d 1006 (2011).

For these reasons, we agree with the Appellate Court's ultimate conclusion that the defendant waived his claim that the trial court improperly omitted an instruction on the defense of personal property with respect to the charge of assault. As a result, the defendant's conviction must stand.[16]

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018); we decline to identify any party protected or sought to be protected under a protective order or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

** The listing of justices reflects their seniority status on this court as of the date of oral argument.

*** July 28, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Although the defendant was also convicted of criminal violation of a protective order in violation of General Statutes § 53a-223 (a), defense counsel expressly abandoned any challenge to that conviction during oral argument before this court.

[2] The precise series of events preceding the victim's arrival was disputed at trial. The victim testified that the defendant had sent her text messages asking to meet up and that, although she was initially hesitant, she eventually agreed. The defendant testified that the victim had called him that day and that, after he declined to speak, she had "demanded to come to the apartment . . . ." This discrepancy, however, is not relevant to the issues in the present appeal.

[3] The defendant testified that his mother was suffering from terminal cancer, that he had been using her vehicle to visit her at the hospital, and that he did not have another set of keys to that vehicle.

[4] A recording of the 911 call placed by the bystander was admitted into evidence as a full exhibit at trial and was played for the jury. That same bystander subsequently testified at trial as follows: "I looked out the window and . . . I saw some kicking. I saw [the female] on the ground, and I saw someone—the male, you know, really giving it to her, stomping on her."

[5] At trial, the state introduced into evidence medical records and photographs detailing the victim's various injuries.

[6] Officer Marcus Burrus of the New Britain Police Department arrived at the scene shortly after this confrontation in response to the 911 call. See footnote 4 of this opinion. Burrus testified at trial that, while he and the victim were waiting for medical assistance to arrive, the victim's cell phone received an incoming call from the defendant. Burrus stated that, during this call, which he had answered, the defendant admitted to confronting the victim about his mother's car keys but denied ever touching the victim.

[7] In arguing that the jury should find the defendant not guilty of assault, defense counsel emphasized the defendant's testimony that any contact was unintentional and again posited that the defendant "was just trying to shake [his leg] to get away."

[8] The trial court instructed the jury in relevant part: "The evidence in this case raises the issue of the use of force against another to defend personal property. This defense applies to the charge of robbery in the first degree. After you have considered all the evidence in this case on the charge of

robbery in the first degree, if you find that the state has proved each element beyond a reasonable doubt, then you must go on to consider whether or not the defendant acted justifiably in the defense of personal property. In this case, you must consider this defense in connection with count one of the information." The present appeal does not require this court to address the propriety of such an instruction in connection with a robbery charge. Cf. *State* v. *Smith*, 317 Conn. 338, 354, 118 A.3d 49 (2015) ("a defendant who used unreasonable force to take his own property (or, indeed, a third person's property) from another person in order to prevent an attempted larceny could not be charged with robbery in the first instance, but could be charged only with an offense involving the use or threatened use of physical force, such as assault or unlawful restraint").

[9] The defendant also claimed that he was deprived of his constitutional right to a fair trial as a result of alleged prosecutorial impropriety. *State* v. *Ramon A. G.*, supra, 190 Conn. App. 484. The Appellate Court's resolution of that claim is not at issue in the present appeal.

[10] We note that the second certified question, as originally drafted, contained a scrivener's error. For the sake of clarity, we have reformulated that question to conform to the issues actually presented in this appeal. See, e.g., *State* v. *Ouellette*, 295 Conn. 173, 183–84, 989 A.2d 1048 (2010).

[11] Practice Book § 42-16 provides in relevant part: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. . . ."

[12] Our rules of practice also expressly require written requests to charge to detail the evidentiary basis for the requested instruction. Practice Book § 42-18 (a). We note that the defendant's written request failed to do so.

[13] Having reached this conclusion, we need not consider whether the defendant would prevail under the heightened standard set forth in *State* v. *Paige*, supra, 304 Conn. 443, and *State* v. *Johnson*, 316 Conn. 45, 54–55, 111 A.3d 436 (2015).

[14] "Under *Golding*, it is well settled that a defendant may prevail on an unpreserved claim when: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 809 n.5, 155 A.3d 209 (2017).

[15] In *Kitchens*, this court concluded that, "when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." *State* v. *Kitchens*, supra, 299 Conn. 482–83. In the present case, the Appellate Court concluded that this standard was satisfied because the trial court solicited input from defense counsel on multiple occasions and distributed various drafts of its proposed instructions. *State* v. *Ramon A. G.*, supra, 190 Conn. App. 503. Although the record before us contains ample evidence that may have supported a finding of waiver under *Kitchens*, we need not look to defense counsel's mere review and acceptance of the trial court's instructions as a whole to support a finding of a waiver. Because we conclude that the defendant, through counsel, engaged in conduct that was itself sufficient to establish waiver under our previously existing jurisprudence; see, e.g., *State* v. *Fabricatore*, 281 Conn. 469, 481–82, 915 A.2d 872 (2007); the present appeal simply does not call for an application of the rule pronounced in *Kitchens*.

[16] The defendant also requests relief under the plain error doctrine. See Practice Book § 60-5. Although this court has recently stated that an implied waiver under *Kitchens* does not necessarily preclude review under the plain error doctrine; see *State* v. *McClain*, supra, 324 Conn. 805; our decision in that case does not explicitly state whether its holding extends to other forms of instructional waiver. Cf. *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 70, 967 A.2d 41 (2009) ("a valid waiver . . . thwarts plain error review" (internal quotation marks omitted)). Even if we were to assume that plain

error review remains available to the defendant as a procedural matter, however, we would decline to invoke it under the facts of this particular case. The plain error doctrine is an "extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. . . . [I]t is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy." (Internal quotation marks omitted.) *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009). Because the defendant's own account of the events on the night in question indicates that he did not use force against the victim in an attempt to regain his mother's keys, we can perceive of no manifest injustice in the trial court's failure to instruct the jury with respect to defense of personal property in connection with the assault charge.

———————————————————